IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BRENDA GEIGER, CLAUDIA SAMPEDRO, EVA PEPAJ, IRINA VORONINA, JESSICA BURCIAGA, JESSICA HINTON a/k/a JESSA HINTON, MASHA LUND a/k/a MALU LUND, RACHEL KOREN a/k/a RACHEL BERNSTEIN, SARA UNDERWOOD, LINA POSADA, and KATARINA VAN DERHAM, <br><br> Plaintiffs, <br><br> vs. <br><br> THE RACING STABLES d/b/a THE STABLES CLUB, <br><br> Defendant. | Case No. 4:21-cv-03523-JD <br><br><br><br><br> **ORDER** |

Before the Court is Plaintiffs' supplemental expert report regarding damages. (DE 23.) For the reasons below, Plaintiffs are awarded amended damages as provided herein.

## I.     BACKGROUND

### A.     Factual Background[1]

### 1.     The Parties

Plaintiffs Brenda Geiger, Claudia Samper, Eva Pepaj, Irina Voronina, Jessica Burciaga, Jessica Hinton a/k/a Jessa Hinton, Masha Lund a/k/a Malu Lund, Rachel

---

[1]     The facts are taken from Plaintiffs' Complaint and are accepted as true.

1

Koren a/k/a Rachel Bernstein, Sara Underwood, Lina Posada, and Katarina Van Derham ("Plaintiffs") are professional models who reside in various states across the United States. (DE 1 ¶¶ 23–33.) Each Plaintiff is alleged to have achieved national or international recognition through their modeling careers, which include work for major publications, brand endorsements, television, and film appearances, and robust social media followings. (*Id.* ¶¶ 34–44.)

Defendant The Racing Stables d/b/a The Stables Club ("The Stables Club" or "Defendant") is a corporation organized under South Carolina law, with its principal place of business located at 2734 Highway #9 West, Little Rock, South Carolina. Defendant owns and operates The Stables Club, a nightclub located at 2722 Highway 9 W in Dillon, South Carolina. (*Id.* ¶ 7.) At all times relevant to the Complaint, Defendant operated The Stables Club as a venue serving food and alcohol in an environment featuring nude or semi-nude female entertainers. (*Id.* ¶ 63.)

### 2. Defendant's Asserted Misappropriation

Plaintiffs allege that Defendant knowingly misappropriated, altered, and published photographs of each Plaintiff without consent or compensation to promote The Stables Club on social media platforms, including Facebook, Instagram, and Twitter. (DE 1 ¶¶ 2–3, 45–46, 61, 68–69.) Defendant allegedly used Plaintiffs' images in such a way as to falsely suggest that Plaintiffs were employed at, endorsed, or were otherwise affiliated with the Club. (*Id.* ¶¶ 47–49, 62–63, 70–71.) Plaintiffs contend that Defendant's conduct caused reputational harm, commercial injury, and emotional distress, as the images were modified to depict Plaintiffs in sexually

suggestive or misleading contexts associated with adult entertainment. (*Id.* ¶¶ 2–3, 50–55, 72–76, 93–94.) The Complaint further alleges that Defendant's actions violated the Plaintiffs' statutory and common law rights, including the Lanham Act, rights of publicity, and privacy, and constituted false advertising, defamation, and unfair trade practices. (*Id.* ¶¶ 95–165.) Each Plaintiff alleges that she was never employed by The Stables Club, never authorized or licensed use of her image to Defendant, and never received any remuneration in connection with Defendant's use of her likeness. (*Id.* ¶¶ 34–44, 50–53, 63, 75–76.)

### 3.     Procedural Background

Plaintiffs initiated this action on October 27, 2021, asserting nine claims under federal and South Carolina law against Defendant The Stables Club (DE 1). The Complaint includes claims for false advertising and false association under the Lanham Act, misappropriation of likeness, unfair trade practices, defamation, negligence, conversion, unjust enrichment, and quantum meruit. (*Id.* ¶¶ 95–165.) As relief, Plaintiffs sought actual and punitive damages, treble damages, attorneys' fees and costs, and a permanent injunction barring Defendant from using Plaintiffs' images in any commercial capacity. (*Id.* ¶¶ 166–170.)

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 for the federal claims and 28 U.S.C. § 1367 for the related state-law claims. (*Id.* ¶¶ 4–5.) Venue lies in the District of South Carolina, as Defendant's principal place of business and the events giving rise to the claims occurred in Dillon County, South Carolina. (*Id.* ¶¶ 6–

7.) Service of process was directed to Defendant's registered agent in Little Rock, South Carolina. (*Id.* ¶ 13.)

The Court initially granted Plaintiffs' motion for default judgment by text order, finding Plaintiffs were entitled to a permanent injunction and reasonable attorney's fees and costs. (DE 14.) The Court further ruled that each Plaintiff would be awarded 25% of the total damages calculated by Plaintiffs' expert, Stephen Chamberlin. (*Id.*) However, the text order did not specify which claims formed the basis for the judgment.

After that, Plaintiffs filed an unopposed motion under Rule 59(e) to alter or amend the judgment requesting that the Court to either: (1) enter judgment in Plaintiffs' favor in the amount of $232,000 as stated in their expert's affidavit; or (2) order an inquest in which the Court can question Plaintiffs' expert concerning his valuation opinion and methodology. (DE 16.)

In a subsequent text order, the Court granted Plaintiffs' Rule 59(e) motion in part. (DE 18.) While acknowledging the claims and relief sought by Plaintiffs (DE 1 at 18–25), the Court found that not all claims were supported in the Complaint to warrant entry of default judgment. In particular, the Court determined there was inadequate support for awarding default judgment on Plaintiffs' claims for unfair trade practices, negligence, conversion, and quantum meruit—citing similar conclusions reached in *Kimberly "Kim" Cozzens et al. v. Int'l KDC, Inc. d/b/a The Trophy Club Florence*, No. 4:22-cv-02534 (D.S.C.).

4

Upon finding clear error and a likely of manifest injustice, the Court reopened the issue of liability to determine which claims would support entry of judgment and to resolve the corresponding damages or other relief (including costs, attorneys' fees, and potential treble damages).[2] (DE 18.) In doing so, the Court also permitted Plaintiffs to revisit the 75% reduction previously applied to each Plaintiff's recovery based on Stephen Chamberlin's expert declaration, which reflected a detailed review of each model's earning history, market demand, and other commercial factors. (DE 13-1 at 4–5.)

The Court ordered Plaintiffs to file a supplemental memorandum within thirty days addressing Defendant's liability as to the four challenged claims and to submit supplemental declarations substantiating each Plaintiff's work history and daily rates. (DE 18.) On February 7, 2025, Plaintiffs filed a Notice of Withdrawal for the four challenged claims, unfair trade practices, negligence, conversion, and quantum meruit. (DE 21.) On May 29, 2025, Plaintiffs provided an Individual Fair Market Value Analysis for Each Model for *in camera* review. (DE 23.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the process for obtaining a default judgment. It creates a two-step process, the first of which "is the entry of default, which must be made by the clerk '[w]hen a party against whom a judgment for

---

[2]    The Court does not undertake these actions lightly, particularly in view of the fact that the prior measures were ordered by another district judge (DE 16). Moreover, the Fourth Circuit has expressly cautioned that a subsequent judge "should be hesitant to overrule the earlier determination." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018).

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 130 (4th Cir. 2020) (quoting Fed. R. Civ. P. Rule 55(a)). Upon entry of default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). But "a default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover." *Id.* (quoting another source).

Following an entry of default, "[t]he second step is the subsequent entry of default judgment," which may be done in one of two ways. *Fidrych*, 952 F.3d at 130. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," then the clerk may enter judgment on the defendant's default. Rule 55(b)(1), Fed. R. Civ. P. If the plaintiff's claim is not for a sum certain, however, then it must be judgment must be entered by the Court. *See* Rule 55(b)(2), Fed. R. Civ. P. ("In all other cases, the party must apply to the court for a default judgment. . . .").

Because "a default is not treated as an absolute confession by defendant of his liability and of the plaintiff's right to recover," the Court must, upon request for judgment on the entry of default, "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in this action." *Ryan*, 253 F.3d at 780 (citations omitted). In other words, if this Court concludes the well-pleaded allegations of fact in Plaintiffs' complaint support the relief it seeks against Defendant, then, by reason of default, liability has been established.

A judgment of default, however, is not final without a determination of relief. *See Fidrych*, 952 F.3d at 130 ("Because no damages were awarded, the district court's order was not a final judgment of default."). Therefore, if the Court determines liability has been established, the Court must then determine damages in accordance with Rule 55(b).

## III.    DISCUSSION

**A.    Liability[3]**

**1.    Counts I and II: False Advertising and False Association Under the Lanham Act**

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, 123 S. Ct. 2041, 2045 (2003) (quoting another source). Section 43(a) of the Lanham Act, entitled "civil action," provides that:

> (1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[3]    In light of the Plaintiffs' withdrawal of Counts 4, 7, 8, and 10, the Court will address liability and damages only with respect to the remaining causes of action.

> (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a). Relevant here, encompassed in this statutory language are "unfair competition causes of action for false association and false advertising[.]"[4] *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016).

To assert a false-advertising claim under the Lanham Act, a plaintiff must establish that:

> (1)    the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;
>
> (2)    the misrepresentation is material, in that it is likely to influence the purchasing decision;
>
> (3)    the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;
>
> (4)    the defendant placed the false or misleading statement in interstate commerce; and
>
> (5)    the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011).

To assert a false-association claim, a plaintiff must establish:

---

[4]    Plaintiffs' asserted injuries under these causes of action (*see, e.g.*, DE 1 at 11 ¶¶ 51–53) are in the "zone of interests" protected by the Lanham Act. *Belmora LLC*, 819 F.3d at 706 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014)) (holding that all is required for "a plaintiff's [false-advertising] claim [to] fall within the 'zone of interests' protected by the statute" is an allegation of "an injury to a commercial interest in reputation or sales").

(1)    the defendant "use[d] the mark in U.S. commerce in connection with the sale of goods or services";

(2)    the defendant's "use of [the plaintiff's] mark is likely to cause consumer confusion"; and

(3)    the defendant's use "will likely damage" the plaintiff.

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 743 F. App'x 457, 463 (D.C. Cir. 2018) (per curiam); *see Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024); (noting "misappropriating a trademark or falsely implying an endorsement" are exemplar cases under § 1125(a)(1)(A)).

Starting with Plaintiffs' false-advertising claim, the Court concludes that the facts deemed admitted by Defendant sufficiently establish all the elements of a false-advertisement claim under § 43(a). Here, the well-pleaded allegations establish that Defendant used altered images of Plaintiffs in social media advertisements promoting The Stables Club, despite knowing that Plaintiffs had no affiliation with the club. (DE 1 ¶¶ 2–3, 45–46, 61–63, 68–70.) These advertisements were misleading because they implied Plaintiffs had appeared at, endorsed, or supported The Stables Club. (*Id.* ¶¶ 47–49.)

The representations were clearly material, as they were designed to increase patronage and revenue by exploiting Plaintiffs' fame and goodwill. (*Id.* ¶¶ 50, 55.) Defendant's conduct occurred in interstate commerce through social media platforms accessible nationwide. (*Id.* ¶ 61.) Plaintiffs also allege that they suffered reputational damage and commercial injury from the unauthorized association with an adult entertainment venue, diminishing the value of their brand and marketability. (*Id.* ¶¶

53–54, 93–94.) Accordingly, the Court finds that Plaintiffs have satisfied all five elements of a Lanham Act false advertising claim.

Turning to Plaintiffs' false-association claim, on the face of the complaint, the Court likewise concludes such a claim is established as to Plaintiffs. The social media advertisements constituted commercial uses of Plaintiffs' images. (DE 1 ¶¶ 45–46.) These uses created a false impression of affiliation, endorsement, or employment, which is likely to confuse the public, especially given the Plaintiffs' notoriety and well-established commercial personas. (*Id.* ¶¶ 34–44, 47–49.) Courts have recognized that use of a well-known individual's image in a commercial context, even without express statements, may imply endorsement and thus create actionable confusion. *See Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (noting "public prominence" of model-plaintiffs was important "to determine the strength of their marks, because among other reasons, the advertisements at issue provided no information identifying [model-plaintiffs] other than their pictures"). Plaintiffs have further alleged damages arising from this confusion, including lost licensing opportunities and reputational harm. (DE 1 ¶¶ 53–55.) As in *Cozzens*, these allegations are sufficient to support a finding of liability under § 1125(a)(1)(A).

### 2.     Count III: South Carolina Misappropriation of Likeness

"Misappropriation of identity is a tort arising from the right to privacy and is designed to prevent the commercial use of one's name or image without consent. To plead misappropriation of identity, the plaintiff must claim 'an appropriation without consent, of one's name or likeness for another's use or benefit.'" *Gignilliat v.*

*Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 463, 684 S.E.2d 756, 762 (2009) (quoting another source). Where a plaintiff makes a prima facie showing, "the court will presume damages . . . ." *Gignilliat*, 385 S.C. at 463, 684 S.E.2d at 762.

Plaintiffs' images belong to Plaintiffs, who have the right to "licens[e] [their] [i]mages" for remuneration. Plaintiffs have not consented to Defendant's use. (DE 1 ¶¶ 2–3, 45–46, 50–53, 61–63.) For these and the other reasons adduced above, the Court finds the well-pleaded factual allegations of the complaint, deemed admitted by Defendant, are enough to support Defendant's liability for the commission of this tort.

### 3.     Count V: South Carolina Defamation

"Defamatory communications take two forms: libel and slander. Libel is the publication of defamatory material by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed word." *Parrish v. Allison*, 376 S.C. 308, 320, 656 S.E.2d 382, 388 (Ct. App. 2007). "A person makes a defamatory statement if the statement 'tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him.'" *Fountain v. First Reliance Bank*, 398 S.C. 434, 441, 730 S.E.2d 305, 309 (2012). The South Carolina Supreme Court requires that "a plaintiff [must] prove the following four elements to state a claim for defamation:

(1)     a false and defamatory statement was made;

(2)     the unprivileged publication was made to a third party;

(3)     the publisher was at fault; and

11

> (4)     either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

*Fountain v. First Reliance Bank*, 398 S.C. at 441, 730 S.E.2d at 309 (internal quotation marks omitted).

"If the defamatory meaning of a message or statement is obvious on the face of the statement, the statement is defamatory per se." *Parrish v. Allison*, 376 S.C. 308, 321, 656 S.E.2d 382, 389 (Ct. App. 2007). "If the statement is actionable per se, then the defendant "is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages." *Fountain*, 398 S.C. at 442, 730 S.E.2d at 309. "The tort of defamation therefore permits 'a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff.'" *Id.* (quoting another source).

The well-pleaded factual allegations deemed admitted by Defendant suggest that the same has published false and defamatory statements about Plaintiffs. Defendant's asserted libel of Plaintiffs conveys at least three reasonable meanings: that Plaintiffs endorse The Stables Club, that Plaintiffs are strippers at the club, or that they modeled for the club. All three are false, but only the second is likely defamatory.[5] Because "[a] statement may be deemed non-defamatory as a matter of law *only* if it is incapable of being interpreted as defamatory by any reasonable construction," the allegations here are sufficient. *Cruce v. Berkeley Cnty. Sch. Dist.*, 442 S.C. 1, 15, 896 S.E.2d 765, 772 (2024) (emphasis added), *reh'g denied* (Feb. 7,

---

[5]     After all, included in the asserted libels here are Plaintiffs photos in lingerie or lingerie-type clothing or costumes. (DE 23.)

2024). Because the deployment of Plaintiffs' images in connection with The Stables Club's business is "written"—i.e., it is libelous—"the law presumes the defendant acted with common law malice and that the plaintiff suffered general damages." *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 510, 506 S.E.2d 497, 501 (1998). These facts and presumptions are enough to entitle Plaintiffs to relief under South Carolina law.

### 5.    Count IX: South Carolina Unjust Enrichment

"Unjust enrichment is an equitable doctrine, which permits recovery of the amount that the defendant has been unjustly enriched at the expense of the plaintiff." *Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 256–57, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011). "To prevail under this theory, a plaintiff must show the following elements: '(1) [a] benefit conferred by [the] plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.'" *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 467, 684 S.E.2d 756, 764 (2009) (quoting another source).

Plaintiffs' allegations—for the reasons set forth at length above—establish the applicability of this equitable remedy to the facts here. It would be unjust to permit Defendant to continue to monetize Plaintiffs' images without Plaintiffs' permission or any remuneration.

In sum, the Court finds adequate grounds to support liability on Plaintiffs' Counts I, II, III, VI, and IX, and judgment will be entered accordingly. The Court does

not find adequate support for Count VI, Negligence, and respondeat superior under South Carolina common law.

## B.     Relief

Since the Court has determined liability on several claims raised by Plaintiffs, default judgment is appropriate. The next step is determining the appropriate relief. Rule 55(b), Fed. R. Civ. P.

### 1.     Injunctive relief

Plaintiffs seek injunctive relief. (*See* DE 1.) Section 34 of the Lanham Act allows a district court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. § 1116(a). To establish entitlement to an injunction, though, a plaintiff must show:

- that it has suffered an irreparable injury;

- that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

- that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

- that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In addition, where a likelihood of confusion is found to exist, a presumption exists as to a finding of irreparable harm. *See* 15 U.S.C. § 1116(a).

As noted *supra*, there is a likelihood of consumer confusion here. Thus, the Lanham Act's presumption of irreparable harm favors Plaintiffs. Monetary remedies are also insufficient, considering the allegations that Defendant continuously "republicized Plaintiff[s']" likenesses (presumably) in Plaintiffs' images in "different

medi[a]" over time. (DE 1 ¶ 101.) Since, among other things, Plaintiffs' images falsely suggest that Plaintiffs are "strippers working at Stables" (DE 1 ¶¶ 110, 123, 144), an injunction directing Defendant to cease its use of Plaintiffs' images is necessary to prevent ongoing harm to Plaintiffs. On the well-pleaded facts here, an injunction can be no hardship for Defendant since it simply requires Defendant to no longer violate Plaintiffs' rights. The public interest favors the protection of the right to control the commercialization of one's likeness, among other bedrock policies of law implicated here. Thus, an injunction is warranted.

### 2. Damages

Together with the injunction, Plaintiffs seek $232,000.00 based on Defendant's unauthorized use of Plaintiffs' images as well as "all costs and attorney's fees incurred prosecuting this action . . . ." (DE 1.)

### (a) Attorney's fees and costs under the Lanham Act

The Court begins with Plaintiffs' entitlement to attorney's fees. The underlying rule in American civil litigation is that "[u]nless a federal statute[ ] . . . provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d), Fed. R. Civ. P. However, the Lanham Act permits the prevailing party to recover both the "costs of the action," and "in exceptional cases," an award of reasonable attorney's fees. 15 U.S.C. § 1117(a). In the context of this case, Plaintiffs are "prevailing parties." *Cf. CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016) (noting that "[a] plaintiff seeks a material alteration in the legal relationship between the parties").

For purposes of an award of attorney's fees under the Lanham Act, "[t]here is no 'precise rule or formula for' determining whether a case is 'exceptional.'" *Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 80 (4th Cir. 2019) (per curiam) (quoting another source). Instead, courts are to employ a "three-part test" to determine whether attorney's fees should be awarded: if, "in light of the totality of the circumstances,"

> (1)     "there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable";
>
> (2)     "the non-prevailing party has litigated the case in an unreasonable manner"; or
>
> (3)     "there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence . . . ,"

then attorney's fees should be awarded. *Id.* (quoting *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015), *as amended* (Apr. 15, 2015)).

Under this test, the Court cannot conclude that attorney's fees are warranted. In the present posture of this matter, the first two factors do not apply. And as to the third, though there are facts sufficient to support the Lanham Act claims alleged, nothing suggests further "compensation or deterrence" is required. *See Sampedro v. Anyado Grp., LLC*, No. CV 22-1402 (BAH), 2023 WL 1398577, at *11 (D.D.C. Jan. 31, 2023) (noting under similar facts that absent "aggravating details" such as a defendant brazenly ignoring a cease-and-desist letter or a defendant's ongoing use of

images of the model-plaintiffs over an extended period, the equities do not suggest that attorney's fees are appropriate).[6]

However, Plaintiffs may obtain appropriate costs after complying with the appropriate rules in this district. *See* Local Civ. Rule 54.03 (D.S.C.); Rule 54(d), Fed. R. Civ. P.

### (b)     Plaintiffs' actual damages

The Court turns to the damages sought here. The Lanham Act permits a plaintiff whose rights are vindicated under § 43(a), "subject to the principles of equity," to "recover . . . any damages sustained by the plaintiff, and . . . the costs of the action." 15 U.S.C.A. § 1117(a). As noted above, Plaintiffs are entitled to damages for Defendant's common-law torts.

Plaintiffs offer a methodology for calculating their substantial actual damage figure. That methodology is explained and set forth in an affidavit proffered by Stephen Chamberlin and supported by the supplemental information provided *in camera* relating to the individual fair market value analysis for each plaintiff. (*See* DE 13-1, 23.) Chamberlin is sufficiently qualified by his extensive experience, which includes over thirty years of experience as a "model and talent agent." (*See* 13-1 ¶1.) During those thirty years, Chamberlin has gained experience with "the economics of image use" and the "valuation of image uses" of models like Plaintiffs. (*Id*.)

---

[6]     Because Plaintiffs have withdrawn the SCUTPA claim, the Court does not consider the attorney's fees provision in that statute. Nor do Plaintiffs' common-law claims carry the possibility of attorney's fees.

(i)     **Standard Business Practices in the Modeling Industry**

Chamberlin's affidavit sets forth a methodology that reasonably explains the damages sought. He notes that in the modeling industry, hiring models of Plaintiffs' caliber involves a certain methodology and process. (*See* DE 13-1 ¶¶ 12–14.) One critical aspect of this methodology is the negotiation process for coming to a fee for the model's services, referred to as a "day rate." (DE 13-1 ¶¶ 18-22.) Negotiations for the appropriate day rate involves consideration of at least these factors: the Model's desirability, based on several factors, including the demand for his or her services and relevance to product, the Model's work history, and the nature of the business seeking a Mode's service. (*Id.* ¶ 20-22.)

Chamberlin explains that most licenses to use a model's image are for one, two, or three-year terms, but almost never is there a "[u]nlimited" term. (DE 13-1 ¶ 34 (noting one year is most common).)

Of course, as Chamberlin notes, no negotiation took place here. (*Id.* ¶ 35.) Nor did Plaintiffs participate in a photo shoot (which necessarily would occur, according to Chamberlin, because Plaintiffs do not sell pre-shot images of themselves). (*Id.* ¶ 19.) As Chamberlin stated in his affidavit, Plaintiffs *would not have* worked with the Club because of the "anticipated and expected losses of marketability" that would result. (DE 13-1 at ¶ 8.) This means that here, Chamberlin "retroactively assess[es]" damages in a counterfactual world where Plaintiffs *do* agree to associate themselves with the Club, with a "premium" for the reputational ding that association with the Club would cause. (*Id.* ¶¶ 37-39.)

18

(ii)     The fair market value of Defendant's misappropriation

In this case, Chamberlin provided a summary chart designed to explain each Plaintiffs' damages, which is modified below:

| Model | Day Rate | Images | Usages | Damages |
|---|---|---|---|---|
| Brenda Geiger | $5,000 | 1 | 2 | $10,000 |
| Claudia Sampedro | $5,000 | 2 | 2 | $20,000 |
| Eva Pepaj | $5,000 | 1 | 2 | $10,000 |
| Irina Voronina | $7,500 | 1 | 2 | $15,000 |
| Jessica Burciaga | $7,500 | 2 | 2 | $30,000 |
| Jessa Hinton | $7,500 | 2 | 2 | $30,000 |
| Masha Lund | $3,500 | 1 | 2 | $7,000 |
| Rachel Koren | $7,500 | 1 | 2 | $15,000 |
| Sara Underwood | $25,000 | 1 | 3 | $75,000 |
| Lina Posada | $5,000 | 1 | 2 | $10,000 |
| Katarina Vanderham | $5,000 | 1 | 2 | $10,000 |
| **TOTAL** | | | | **$232,000** |

(DE 13-1 at 24.)

Essentially, the chart categorizes each Plaintiff's day rate multiplied by the number of images and the number of distinct uses of the images to approximate total amount of damages per Plaintiff, which when added, yields total damages of $232,000. (*See* DE 23.)

Under the circumstances and based on the record before the Court, this formulation is reasonable. As the complaint and the sealed supplemental material make clear, each Plaintiff has had experience that, absent adversarial testing, appears to reasonably justify her day rate. In addition, as noted above, images can

be used an unlimited number of times within that usage category for the negotiated duration, which (again) is "most common[ly]" one year.

Another seeming issue is that the day rate and usage values are the same each year, effectively making each year a multiplier without other cost drivers, such as a second photo shoot. Chamberlin explained in his affidavit that, typically, each subsequent year of usage would "include a fee or rollover based on time that the images are used." (DE 13-1 at ¶¶ 33-34.)

Given the foregoing, the Court finds that the methodology and figures are reasonable. Though "[t]he law disfavors default judgments as a general matter," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (quoting another source), it is equally true that the adversary process cannot grind to a halt by one party's refusal to participate. Defendant's choice not to participate in these proceedings and call into question Plaintiffs' contentions does not mean Plaintiffs are prohibited from vindicating their rights.

## IV.    CONCLUSION

For these reasons, this Court concludes Defendant is liable to Plaintiffs on only the following claims in Plaintiffs' Complaint (DE 1):

(1)    Count I: False advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

(2)    Count II: False association under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

(3)    Count III: Misappropriation of likeness under South Carolina common law,

(4)    Count VI: Defamation under South Carolina common law.

(5)     Count IX: Unjust Enrichment under South Carolina common law.

**IT IS FURTHER ORDERED** that Plaintiffs are entitled to recover damages

from Defendant as follows:

(1)     Brenda Geiger - $10,000
(2)     Claudia Sampedro - $20,000
(3)     Eva Pepaj - $10,000
(4)     Irina Voronina - $15,000
(5)     Jessica Burciaga - $30,000
(6)     Jessa Hinton - $30,000
(7)     Masha Lund - $7,000
(8)     Rachel Koren - $15,000
(9)     Sara Underwood - $75,000
(10)    Lina Posada – $10,000
(11)    Katarina Vanderham - $10,000

for a total award of $232,000.00.  Plaintiffs shall also be entitled to costs under the

Lanham Act, 15 U.S.C.§ 1117.

**AND IT IS FURTHER ORDERED** that Defendant is permanently enjoined

from using Plaintiffs' images to promote The Stables Club.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

July 16, 2025
Florence, South Carolina